**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| In re: | Case No. 26-03127-swd |
| SUNSET PROPERTIES, LLC, | In Proceedings Under<br>Chapter 11 |
| Debtor.<br>______________________________/ | Hon. |

# **DEBTOR'S PLAN OF REORGANIZATION**

PREPARED BY:

DANIEL J. WEINER (P32010)
HOWARD M. BORIN (P51959)
JOHN STOCKDALE, JR. (P71561)
SCHAFER AND WEINER, PLLC
Proposed Counsel for Debtor
40950 Woodward Ave., Ste. 100
Bloomfield Hills, MI 48304
(248) 540-3340
dweiner@schaferandweiner.com

**DISCLAIMER: THE PROPOSED DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT AS CONTAINING ADEQUATE INFORMATION UNDER SECTION 1125(b) OF THE BANKRUPTCY CODE FOR USE IN CONNECTION WITH THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OF REORGANIZATION DESCRIBED HEREIN. ACCORDINGLY, PRIOR TO THE ENTRY OF AN ORDER GRANTING APPROVAL TO THE DISCLOSURE STATEMENT, THE FILING AND DISSEMINATION OF THIS PLAN OF REORGANIZATION AND/OR THE DISCLOSURE STATEMENT ARE NOT INTENDED TO BE AND SHOULD NOT IN ANY**

**WAY BE CONSTRUED AS A SOLICITATION OF VOTES ON THE PLAN NOR SHOULD THE INFORMATION CONTAINED HEREIN BE RELIED ON FOR ANY PURPOSE. THIS DISCLAIMER MAY BE REMOVED AFTER THE COURT GRANTS APPROVAL TO THE DISCLOSURE STATEMENT AND PRIOR TO DISSEMINATION TO THE CREDITORS.**

**THE DEBTOR EXPRESSLY RESERVES ITS RIGHT TO AMEND THIS PLAN OF REORGANIZATION.**

**THIS PLAN CONTAINS THIRD-PARTY RELEASES. BY VOTING IN FAVOR OF THIS PLAN, YOU WILL HAVE RELEASED THOSE THIRD-PARTIES. PLEASE REVIEW THIS PLAN AND CONSULT WITH YOUR COUNSEL IN CONNECTION WITH VOTING ON THIS PLAN.**

## PLAN OF REORGANIZATION

### INTRODUCTION

Sunset Properties, LLC (the "Debtor"), a Michigan limited liability company, hereby proposes in good faith the following Plan of Reorganization (the "Plan") for the resolution of outstanding Creditor[1] Claims and Interests. Reference is made to the Disclosure Statement for a discussion of the Debtor's history, business, properties, results of operations, risk factors and a summary and analysis of the Plan. The Debtor is the proponent of this Plan within the meaning of section 1129 of the Bankruptcy Code.

[1] Defined terms have the meanings ascribed in Article I of this Plan. *See* Article I.

# ARTICLE I

## DEFINITIONS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW

1.1 **SCOPE OF DEFINITIONS; RULES OF CONSTRUCTION.** For purposes of the Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise assigned shall have the meaning ascribed to them in this Article I of the Plan. Any term used in the Plan that is not defined in this Article I of the Plan, but is defined in the Bankruptcy Code the Bankruptcy Rules, or the Disclosure Statement shall have the meaning ascribed to such terms in the Bankruptcy Code, the Bankruptcy Rules, or the Disclosure Statement, as the case may be. Whenever the context requires, such terms shall include the plural as well as the singular.

1.2 **DEFINITIONS**

1.2.1 "**Administrative Claim**" means a Claim for payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(2) of the Bankruptcy Code, including, but not limited to, (a) the actual necessary costs and expenses, incurred after the Petition Date, of preserving the Estate and operating the Debtor's business, including wages, salaries, or commissions for services rendered after the Petition

Date, (b) Professional Fees, (c) all fees and charges assessed against the Estate under 28 U.S.C. § 1930, and (d) all Allowed Claims that are entitled to be treated as administrative claims pursuant to a Final Order under section 546(c)(2) of the Bankruptcy Code.

1.2.2 "**Administrative Creditor**" means any Creditor entitled to payment of an Administrative Claim.

1.2.3 "**Allowed**" means, when used in reference to a Claim or Interest within a particular Class, an Allowed Claim or Allowed Interest of the type described in such Class.

1.2.4 "**Allowed Claim**" means

A. A Proof of Claim or Interest that was:

1. Timely filed;

2. Deemed filed pursuant to section 1111(a) of the Bankruptcy Code; or

3. Filed late with leave of the Bankruptcy Court after notice and an opportunity for hearing given to Debtor and counsel for Debtor; and

B. 1. The Claim is not a Contested Claim or a Contested Interest, or

2. The Claim is allowed (and only to the extent allowed) by a Final Order of the Bankruptcy Court.

1.2.5 "**Article**" refers to a specific article of this Plan.

1.2.6 "**Avoidance Actions**" means all Claims granted to the Debtor-in-Possession or to the Estate under Chapter 5 of the Bankruptcy Code.

1.2.7 "**Ballot**" means the official bankruptcy form no. B314 adopted for this Case or a document prepared to substantially conform to same which was distributed to all Creditors and parties-in-interest in connection with the solicitation of votes for or against the Plan.

1.2.8 "**Bankruptcy Code**" or "**Code**" means the Bankruptcy Reform Act of 1978, as codified in Title 11 of the United States Code (11 U.S.C. §§101, *et seq*.), as in effect as of the Petition Date or thereafter amended to the extent such amendments are applicable to this Case.

1.2.9 "**Bankruptcy Court**" means the United States Bankruptcy Court for the Western District of Michigan or such other court as may have jurisdiction over this Case.

1.2.10 "**Bankruptcy Rules**" or "**Rules**" means the Federal Rules of Bankruptcy Procedure, as promulgated by the Supreme Court that became effective on August 1, 1991 and any amendments thereto, and the Federal Rules of Civil Procedure as amended and as made applicable to this Case or any proceedings therein. To the extent applicable, Bankruptcy Rules also refers to the

local rules of the U.S. District Court for the Western District of Michigan, as amended and as applicable to this Case, and the local bankruptcy rules for the Western District of Michigan, as amended.

1.2.11 **"<u>Bar Date(s)</u>"** means the date(s), if any, designated by the Bankruptcy Court as the last date(s) for filing Proofs of Claim or Interest against the Debtor, or otherwise asserting any claim against the Debtor, or, in the absence of such designation as shall be applicable under the Bankruptcy Rules.

1.2.12 "**<u>Business Day</u>**" means any day other than a Saturday, Sunday, or "Legal Holiday" as that term is defined in Bankruptcy Rule 9006(a).

1.2.13 "**<u>Case</u>**" or **"<u>Chapter 11 Case</u>"** means the chapter 11 case of the Debtor pending in the Bankruptcy Court, styled *In re Sunset Properties, LLC*, Case No. 26-03127.

1.2.14 **"<u>Cash</u>"** means legal tender of the United States or the equivalence thereof.

1.2.15 **"<u>Causes of Action</u>"** means any and all present or future claims, rights, legal and equitable defenses, offsets, recoupments, actions in law or equity or otherwise, choses in action, obligations, guaranties, controversies, demands, action suits, damages, judgments, third-party claims, counter-claims, cross-claims against any Person or Entity, whether known or unknown, liquidated

or unliquidated, foreseen or unforeseen, existing or hereafter arising, whether based on legal or equitable relief, whether arising under the Bankruptcy Code or federal, state, common, or other law or equity, whether or not the subject of a pending litigation or proceedings on the Effective Date or thereafter, including without limitation, all other actions described in the Plan, including all Avoidance Actions.

1.2.16 "**Claim**" means any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, contested, disputed, undisputed, legal, equitable, secured or unsecured, or any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

1.2.17 **"Class"** means a category of Holders of Claims or Interests as described in Article III of this Plan.

1.2.18 **"Class I Claim"** has the meaning ascribed to it in Section 3.1 of the Plan.

1.2.19 **"Closing"** means the closing of the equity sale contemplated by Section 5.2 of the Plan following the Equity Auction.

1.2.20 "**Collateral**" means any property or interest in property of the Estate subject to an unavoidable Lien securing the payment or performance of a Secured Claim.

1.2.21 "**Condition Precedent**" has the meaning ascribed to it in Section 5.5 of the Plan.

1.2.22 "**Confirmation Date**" means the date on which the Bankruptcy Court enters the Confirmation Order.

1.2.23 "**Confirmation Hearing**" means the hearing to consider the confirmation of the Plan under section 1128 of the Bankruptcy Code.

1.2.24 "**Confirmation Order**" means the order entered by the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

1.2.25 "**Contested**" means, when used in reference to a Claim or Interest in this Plan, any Claim or Interest as to which the Debtor or any other party-in-interest has interposed an objection or commenced an adversary proceeding in accordance with the Bankruptcy Code, Bankruptcy Rules, and this Plan, which objection has not been determined by a Final Order.

1.2.26 "**Creditor**" means any Holder of a Claim against the Debtor.

1.2.27 **"Cure"** means the payment or other honor of all obligations required to be paid or honored in connection with assumption of an executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, including, to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law: (a) the cure of any non-monetary defaults to the extent required, if at all, pursuant to section 365 of the Bankruptcy Code, and (b) with respect to monetary defaults, the distribution within a reasonable period of time following the Effective Date of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption (or assumption and assignment) of an executory contract or unexpired lease, pursuant to section 365(b) of the Bankruptcy Code, in an amount equal to all unpaid monetary obligations or such lesser amount as may be agreed upon by the parties, under such executory contract or unexpired lease.

1.2.28 **"Cure Notice"** has the meaning ascribed to it in Section 11.5 of the Plan.

1.2.29 "**Debtor**" or "**Debtor-in-Possession**" means Sunset Properties, LLC, a Delaware limited liability company.

1.2.30 **"Deposit"** has the meaning ascribed to it in Section 5.2.1.6 of the Plan.

1.2.31 "**<u>Disallowed</u>**" means (a) a Claim or Interest or any portion thereof, that has been disallowed by a Final Order or a settlement, (b) a Claim or Interest or any portion thereof that is listed in the Debtor's Schedules at zero or as contingent, disputed, or unliquidated and as to which a Bar Date has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law, or (c) a Claim or Interest or any portion thereof that is not listed in the Debtor's Schedules and as to which a Bar Date has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

1.2.32 "**<u>Disclosure Statement</u>**" means the written Disclosure Statement that is incorporated with and into the Plan, as amended, supplemented, or modified from time to time, and that was prepared and distributed in accordance with section 1125 of the Bankruptcy Code and applicable Bankruptcy Rules.

1.2.33 "**<u>Disputed</u>**" means with respect to any Claim or Interest, any Claim or Interest or portion thereof that is neither an Allowed nor Disallowed.

1.2.34 **"Effective Date"** means the later of the first Business Day (i) after the Confirmation Order becomes a Final Order or (ii) one (1) business day after the occurrence or waiver of all Conditions Precedent.

1.2.35 **"Equity Auction"** has the meaning ascribed to it in section 5.2.1.1.

1.2.36 **"Equity Auction Notice Period"** has the meaning ascribed to it in section 5.2.1.2.

1.2.37 **"Equity Purchase Agreement"** means that equity purchase agreement attached to the Plan Supplement as **Exhibit 1.2.40**.

1.2.38 **"Estate"** means the estate of the Debtor in this Case or created pursuant to section 541 of the Bankruptcy Code.

1.2.39 **"Exhibit"** means any exhibit or schedule attached to this Plan, the Disclosure Statement, or incorporated into either by reference, including any amendments and supplemental exhibits or schedules that may be filed subsequent to filing of the Plan and Disclosure Statement.

1.2.40 **"Final Order"** means an order of the Bankruptcy Court as to which (i) the time for appeal has expired and no appeal has been timely taken, (ii) any timely appeal has been finally determined or dismissed and the time for any successive appeal has expired and no successive appeal has been timely taken,

or (iii) an appeal has been timely taken but such order has not been stayed within fourteen (14) days after the filing of such appeal.

1.2.41 **"<u>GAAP</u>"** means generally accepted accounting principles.

1.2.42 **"<u>Governmental Unit</u>"** has the meaning ascribed to it in section 101(27) of the Bankruptcy Code.

1.2.43 **"<u>Group</u>"** means the categories of Claims receiving payment in accordance with the terms set forth in Article II hereof.

1.2.44 **"<u>Holder</u>"** means a Person holding a Claim, Interest, or Lien, as applicable.

1.2.45 **"<u>Impaired</u>"** means, when used with reference to a Claim or Interest, that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.2.46 **"<u>Interest</u>"** means any equity interests in the Debtor, of any kind or nature, including without limitation, any membership or member unit interests.

1.2.47 **"<u>Interest Rate</u>"** means, as the situation requires, either (i) the prime rate of interest as published in the *Wall Street Journal* on the Effective Date plus one (1) percent, (ii) the non-default rate of interest provided in the applicable Loan Documents or otherwise between the Debtor and such Creditor, or (iii) the rate of interest required by applicable non-bankruptcy law.

1.2.48 **"Lender"** means Computershare Trust Company, National Association, as Trustee, on Behalf of The Registered Holders of BMO 2022-C3 Mortgage Trust, Commercial Mortgage Pass Through Certificates, Series 2022-C3 and the Uncertificated VRR Interest Owner or any successor or assignee.

1.2.49 **"Lien"** means a charge against, or an interest in, property to secure payment of a debt or performance of an obligation.

1.2.50 **"Loan Documents"** means any and all documents involving or related to the Claims asserted by such creditor including, without limitation, promissory notes, security agreements, personal guarantees, business loan agreements, and such other agreements as may exist related to involving the Claim(s).

1.2.51 **"New Interests"** means the member interests in the Reorganized Debtor issued pursuant to Article 3.4.2 of this Plan upon the cancellation of the Class IV Interests.

1.2.52 **"Person"** shall have the meaning given to it under section 101(41) of the Bankruptcy Code.

1.2.53 **"Petition Date"** means October 1, 2026, which is the date that the Debtor voluntarily filed its petition for relief pursuant to Chapter 11 of the Bankruptcy Code.

1.2.54 **"Plan"** or **"Plan of Reorganization"** means this Plan of Reorganization as it may be altered, amended, supplemented, or modified from time to time.

1.2.55 **"Plan Supplement"** refers to the implementing documents necessary to effectuate this Plan, all of which shall be on file with the Clerk of the Bankruptcy Court no later than twenty (20) days prior to the Confirmation Hearing or such later date as may be approved by the Bankruptcy Court.

1.2.56 **"Priority Claim"** means a Claim under or entitled to priority under section 507(a) of the Bankruptcy Code and which is not a Secured Claim or an Administrative Claim.

1.2.57 **"Priority Creditor"** means any Creditor entitled to payment of a Priority Claim.

1.2.58 **"Professional"** means any professional employed in this Chapter 11 Case pursuant to sections 327 or 1103 of the Bankruptcy Code seeking compensation or reimbursement of expenses in connection with the Case pursuant to section 503(b) of the Bankruptcy Code or otherwise.

1.2.59 **"Professional Fees"** means the fees and reimbursement for disbursements and expenses owed to Professionals.

1.2.60 **"Proof of Claim"** means a Claim that was either (i) scheduled by the Debtor on its Schedules as a Claim which was not disputed, not contingent, and liquidated, or (ii) a Claim filed by a Holder of a Claim before the Bar Date.

1.2.61 **"Pro-Rata"** means, at any time, the proportion that the face amount of a Claim in a particular Class bears to the aggregate face amount of all Claims (including disputed or Contested Claims) in such Class as of the Confirmation Date, unless the Plan expressly provides otherwise.

1.2.62 "**Retained Action**" means all claims, Causes of Action, rights of action, suits and proceedings, whether in law or in equity, whether known or unknown, which Debtor or Debtor's Estate may hold against any Person.

1.2.63 **"Qualified Bidder"** has the meaning ascribed to it in Section 5.2.1.7 of the Plan.

1.2.64 **"Qualified Bidder Acknowledgement"** means that form attached to the Plan Supplement as **Exhibit 1.2.68**.

1.2.65 **"Qualified Bidder Deposit"** has the meaning ascribed to it in Section 5.2.1.7 of the Plan.

1.2.66 **"Reorganized Debtor"** means the Debtor after the Effective Date.

1.2.67 **"Schedules"** means the schedules of assets and liabilities, the list of Holders of Interests, and the statement of financial affairs filed by the Debtor under section 521 of the Bankruptcy Code and Bankruptcy Rule 1017, as such schedules and statements have been, or may be, supplemented or amended through the Confirmation Date.

1.2.68 **"Section"** refers to a specific section or subsection of this Plan, unless otherwise set forth herein.

1.2.69 **"Secured Claim"** means a Claim secured by a Lien on property in which the Estate has an interest but only to the extent of the value of the Creditor's interest in the Estate's interest in such property as of the Petition Date and only if such Secured Claim is Allowed.

1.2.70 **"Unsecured Claim"** means a Claim that is not a Secured Claim and is not an Administrative Claim or a Priority Claim.

1.2.71 **"Unsecured Creditor"** means any Creditor that holds an Unsecured Claim.

1.2.72 "**Unsecured Distribution Pool**" means the proceeds of the Equity Auction after payment of all Allowed Administrative Claims.

1.3 **<u>RULES OF INTERPRETATION</u>** For purposes of the Plan;

1.3.1 Any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially on such terms and conditions.

1.3.2 Any reference in the Plan to an existing document or Exhibit filed or to be filed means such document or Exhibit as it may have been or may be amended, modified, or supplemented.

1.3.3 Any reference in the Plan to a docket number ("<u>ECF No.</u>") is a reference to a docket number in the Case, unless specifically noted to the contrary.

1.3.4 The words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan, unless expressly stated otherwise.

1.3.5 All references in this Plan to monetary figures refer to currency of the United States of America.

1.3.6 Each pronoun stated in the masculine, feminine, or neuter includes the masculine, feminine, and neuter.

1.3.7 Whenever from the context it is appropriate, each term, whether stated in the singular or plural, shall include both the singular and the plural.

1.3.8 Captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or effect the interpretation of the Plan.

1.3.9 The rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules apply to this Plan.

1.3.10 The Disclosure Statement may be used as an aid for interpretation of this Plan to the extent that any provision of this Plan is determined to be vague or ambiguous. However, to the extent any statement in the Disclosure Statement conflicts with any provision of this Plan, this Plan controls.

1.4 **COMPUTATION OF TIME** In computing any period of time prescribed or allowed by the Plan, the provisions of Rule 9006(a) shall govern.

1.5 **GOVERNING LAW** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Michigan shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan.

1.6 **EXHIBITS**. All Exhibits and Plan Supplements are fully incorporated into and are a part of this Plan and Disclosures Statement as if fully set forth herein

and, to the extent not attached to this Plan, the Exhibits and Plan Supplements shall be filed with the Bankruptcy Court. Upon its filing, any Exhibit and Plan Supplements may be inspected in the office of the clerk of the Bankruptcy Court or its designee during normal business hours or at the Bankruptcy Court's website for a fee at https://www.miwb.uscourts.gov/. The Exhibits and Plan Supplements may also be requested in writing from Debtor's counsel. **All Exhibits and/or the Plan Supplements may be revised before the Confirmation Date by the filing of the revised Exhibits and/or Plan Supplements with the Bankruptcy Court, so long as the revised Exhibits and/or Plan Supplements are substantially in conformance with the terms of this Plan.** The Exhibits and Plan Supplements are an integral part of this Plan, and entry of the Confirmation Order by the Bankruptcy Court will constitute an approval of the Exhibits and Plan Supplements.

1.7 **NO ADMISSIONS; ESTIMATES OF CLAIMS**. Unless expressly stated otherwise, nothing herein will be deemed to be an admission by Debtor or to otherwise prejudice Debtor or Reorganized Debtor in any Claim objection or Cause of Action. All estimates of Causes of Action and Claim amounts listed in the Plan, the Disclosure Statement, and Exhibits are current estimates only. All

Claims amounts and classifications remain subject to the Claims objection process as set forth in Article XII.

1.8 **EVENTS OF DEFAULT**. Unless otherwise specifically provided in a class under the Plan, in the event of a default by Debtor in payments under the Plan or otherwise, the Holder must send written notice ("Default Notice") to Debtor at the address of record for Debtor as reflected on the docket for this Bankruptcy Case, unless Debtor has provided the Holder with a written notice of a change of address. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default, as well as notice that Debtor has ten (10) days (in the case of a monetary default) and thirty (30) days (in the case of a non-monetary default) from receipt by Debtor and Debtor's counsel of the Default Notice (or the following business day if the 10th or 30th day does not fall on a business day) to cure such default (and the address for payment, which will accept overnight deliveries, in the event of a monetary default). The Holder must send such Default Notice to Debtor via certified mail or recognized overnight carrier with a copy via email or fax and certified mail to Howard Borin at the address reflected in the then current directory of the State of Bar of Michigan. Debtor shall have ten (10) days or thirty (30) days (as applicable) from Debtor's and Debtor's counsel's receipt of the Default Notice

to cure such default. Receipt by Debtor's counsel shall not be deemed receipt by Debtor of the required Default Notice. Notwithstanding anything to the contrary in the Plan or otherwise, a default under one Class of Claims shall not constitute a default under any other Class of Claims. (For example, a default under Class I shall not constitute a default under Class II).

1.9 **Notices**. All notices under the Plan shall be in writing. Unless otherwise specifically provided herein, all notices shall be sent to Debtor via U.S. Certified Mail Return Receipt or by recognized overnight carrier to the address of record for Debtor in this Case, unless Debtor has provided such Holder with written notice of change of address for Debtor, with a copy via email or fax and certified mail to Howard Borin at the address reflected in the then current directory of the State Bar of Michigan. Receipt of notice by Howard Borin shall not be deemed receipt by Debtor of the required notice. Notice to creditors may be provided (a) at the address set forth on the proof of claim filed by such Holder, (b) at the address set forth in any written notices of address change delivered to Debtor after the date of any related proof of claim, (c) at the addresses reflected in the Schedules if no proof of claim has been filed and Debtor has not received a written notice of a change of address, or (d) if the Holder's address is not listed in the Schedules, at the last known address of such Holder according to the Debtor's

books and records. Notices shall be deemed received: (i) on the day transmitted if sent via fax or email and (ii) on the day delivered if sent via nationally recognized overnight delivery service or Certified Mail Return Receipt.

## ARTICLE II

### TREATMENT OF CLAIMANTS NOT SUBJECT TO CLASSIFICATION OR OTHERWISE NOT REQUIRED TO VOTE FOR OR AGAINST THE PLAN

Administrative Creditors and Priority Creditors shall be paid as follows:

2.1 **GROUP I - ADMINISTRATIVE CLAIMS**. The Claims of Group I shall consist of all Allowed Administrative Claims, including any Professional Fees and taxes that qualify as Administrative Claims. The Debtor presently estimates that Schafer and Weiner, PLLC will have an administrative claim in the approximate amount of $200,000 for Professional Fees and the United States Trustee will have an administrative claim in the approximate amount of $35,000 for accrued but unpaid United States Trustee Fees. The Debtor reserves the right to a real property valuation expert to testify regarding the value of the Property and estimates that if retained, such expert will charge between $20,000 and $40,000 for its services.

2.1.1 Claims included in this Group shall be Administrative Claims notwithstanding (i) the confirmation of this Plan, (ii) the occurrence of the Effective Date, and/or (iii) the filing of any subsequent proceeding under any

chapter of the Bankruptcy Code. The Reorganized Debtor shall remain responsible for every Claim in this Group if any such Claim is not paid on or before the Effective Date.

2.1.2 Each claimant in this Group shall be paid the full amount of its Claim on such date as may be mutually agreed upon between the Debtor and/or the Reorganized Debtor and the particular claimant, or, if no such date is agreed upon, the latest of (i) the Effective Date, (ii) the date by which payment would be due in the ordinary course of business between the Debtor and such Administrative Creditor, or (iii) the date upon which the Bankruptcy Court enters its order, if necessary, allowing and approving such Debtor's payment of such Administrative Claim and such order becomes a Final Order. Notwithstanding anything to the contrary herein or otherwise, each Holder of a Class III Interest personally guaranties the payment of the Debtor's obligations to the Professionals for Professional Fees in this Group.

2.1.3 Orders of the Bankruptcy Court authorizing the payment of any Group I Claim shall have the effect of a judgment under Bankruptcy Rule 7054.

2.1.3 The Bar Date for asserting any Administrative Claim is sixty (60) days after the Effective Date. Any Administrative Claim first asserted after the Bar Date shall be deemed Disallowed and shall not be entitled any payment

under this Plan. The objection procedures in Article XII of this Plan are applicable to the any Administrative Claim.

2.2 **GROUP II - PRIORITY TAX CLAIMS.** The Claims of Group II shall consist of the Allowed Claims that are entitled to priority under section 507(a)(8) of the Bankruptcy Code. The Debtor estimates that the Berrien County Treasurer will assert a Priority Tax Claim in the amount of approximately $60,000 for accrued but unpaid real estate taxes.

2.2.1 The Claimants of this Group shall receive on account of such Allowed Priority Claim four (4) deferred equal annual cash payments equal to the amount of each Allowed Priority Claim divided by four, plus interest calculated at the Interest Rate. The first annual payment shall be made on the first Business Day that is one (1) year after the Petition Date. The amount to be paid to each Priority Creditor is as estimated in the Disclosure Statement and the exhibits thereto.

2.2.2 Upon failure of the Debtor to make any payment due under the Plan on any Administrative, Secured, Priority, or General Unsecured Claim of the Holders of Claims in Group II, a failure that is not cured within thirty (30) days of the receipt of a written notice of such default by the Debtor or Reorganized Debtor, as the case may be, from such Priority Creditor with a copy to Reorganized Debtor's counsel (which shall not be deemed notice), then such Priority Creditor

may exercise all rights and remedies available under applicable non-bankruptcy law for the collection of its entire Allowed Priority Claim and/or seek appropriate relief from this Court.

2.3 **DETERMINATION OF PRIORITY CLAIMS:** Subject to section 505(a)(2) of the Bankruptcy Code, the Debtor and/or the Reorganized Debtor shall have the right to challenge any Priority Claim through the claims objection process set forth in Article XII, which challenge may include, but need not be limited to, a challenge to any penalty portion of such Claim, the amount and the value of the property which forms the basis for any assessment of taxes, and the computation of any tax. The right to challenge these Claims shall include, without limitation, an objection to the assessment of any Debtor's real or personal property, including, without limitation, the Property, that may or may not have been made by the respective taxing authority.

## ARTICLE III

### SPECIFICATION OF TREATMENT OF CLASSES OF CLAIMS OR INTERESTS NOT IMPAIRED UNDER PLAN AND THOSE IMPAIRED UNDER THE PLAN

The Plan divides Claims and Interests into three (3) Classes and treats them as follows:

3.1 Class I: **Allowed Secured Claim of Lender** Class 1 consists of the Allowed Secured Claim of Lender, if any, and shall be treated as follows

3.1.1 The Allowed Secured Claim of Lender shall continue to accrue Interest at the Interest Rate, which is 5.74% per annum.

3.1.2 The Allowed Secured Claim of Lender shall be amortized over thirty (30) years with monthly payments beginning on the first day of the second month following entry of a Final Order providing Lender with an Allowed Secured Claim.

3.1.3 A balloon payment of the remaining balance on the Allowed Secured Claim of Lender shall be due in full on February 1, 2034.

3.1.4 Debtor may prepay any or all of Lender's Allowed Secured Claim at any time without penalty.

3.1.5 Except as specifically set forth in this Plan or the Confirmation Order, all other provisions of any of the Loan Documents between Debtor and Lender are of no further force or effect, provided that until Lender's Allowed Secured Claim is paid in full, Lender's mortgages shall remain valid except for any provision that provides rights to Lender upon the failure to comply with any of the provisions of the Loan Documents invalidated by the previous sentence. Such

mortgages shall continue to have the same priority as existed immediately before the Petition Date.

3.1.6 Nothing in this Section 3.1 impairs or prohibits the Debtor or Reorganized Debtor from pursuing any objection to Lender's Claim including, without limitation, the validity, priority, extent, or amount of such Claim.

**3.1.7 This Class I is Impaired and entitled to vote to accept or reject the Plan.**

3.2 **Class II**. Class II consists of the Holders of all Allowed Unsecured Claims.

3.2.1 In full and final satisfaction of each Allowed Class II Claim, the Holder of each Allowed Class II Claim shall be paid the full amount of the Allowed Class II Claim, without interest, in two (2) equal payments. The first payment shall be paid on February 1, 2027, and the second payment shall be paid on August 1, 2027.

3.2.2 **This Class II is Impaired and entitled to vote to accept or reject the Plan.**

3.2.3 **Class III:** Class III consists of the Holder of Allowed Interests, which shall be treated in one of two alternative methods.

3.3.1 If Class II votes to accept the Plan, then the Holder of Class III Interests shall retain its equity interests in the Debtor.

3.3.2 If Class II rejects the Plan, and the Court determines that, as a result of such rejection, the Plan does not comply with the absolute priority rule, the Interests of the Debtor held by Class III Holder shall be cancelled, and New Interests shall be issued and sold at the Equity Auction as set forth in Section 5.2 of this Plan. The successful purchaser at the Equity Auction shall be bound by the terms of this Plan and shall be required to use all of the proceeds of the Equity Auction as set forth in this Plan, and all payments shall be subject to the terms of, and payments shall be made in accordance with, the Plan.

3.2.4 **This Class III is Impaired and entitled to vote to accept or reject the Plan.**

## ARTICLE IV
## ACCEPTANCE

4.1 **PRESUMED ACCEPTANCE OF THE PLAN:** There are no Classes that are unimpaired under the Plan; and, thus, no Classes are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

4.2 **<u>PRESUMED REJECTION OF THE PLAN</u>:** There are no Classes that are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

4.3 **<u>VOTING CLASSES</u>:** Classes I through III of the Plan are Impaired under the Plan, and Holders of Claims or Interests in such Classes shall be entitled to vote to accept or reject the Plan.

4.4 **<u>ELIMINATION OF VACANT CLASSES</u>:** Any Class of Claims that does not have a Holder of an Allowed Claim or a Claim temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

4.5 **<u>CRAMDOWN</u>:** If necessary, the Debtor shall request confirmation of the Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code. The Debtor reserves the right to modify the Plan to the extent, if any, that confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification of the Plan.

## ARTICLE V

## EXECUTION AND IMPLEMENTATION OF THE PLAN

5.1 **POST-EFFECTIVE DATE MANAGEMENT**. The Debtor contemplates that during the life of the Plan (as may be modified and confirmed), Matthew Schmidt, through Earned Run Property Management, LLC will continue to operate the Debtor's business and oversee the Debtor's reorganization and operations. Earned Run Property Management, LLC will receive a 3% management fee based on the gross revenue of the Reorganized Debtor. Matthew Schmidt shall not receive any compensation from the Reorganized Debtor/

5.2 **EQUITY SALE.** If a Class of Unsecured Creditors fails to accept this Plan, the Debtor shall sell all of the New Interests.

5.2.1 The Debtor shall sell all of the New Interests in accordance with the following procedures:

5.2.1.1 The Debtor shall conduct an in-person auction sale (the "Equity Auction") at 9:00 a.m. on First Business Day of the Second Month following the Confirmation Date at the office of Debtor's counsel. Any party interested in attending and/or bidding at the Equity Auction may obtain additional details regarding the time, place, and process of the Equity Auction by contacting Debtor's counsel. Unless the Court expressly ordered otherwise, this Section 5.2.1.1 shall be deemed sufficient notice of the Equity Auction to all Creditors and parties-of-interest identified in Debtor's Schedules and no further or additional notice shall be provided to such parties.

5.2.1.2 In addition to notice provided under Section 5.2.1.1, the Debtor shall publish notice of the Equity Action, substantially in the form attached to the Plan Supplement as **Exhibit 5.2.1.2** in a newspaper in the county where the Property is located and such other places as ordered by the Court for four (4) consecutive weeks (the "Equity Auction Notice Period") and post the Equity Auction Notice in a conspicuous place on the Property. The Debtor shall file an affidavit or declaration of compliance with this Section 5.2.1.2 on the docket at the conclusion of the Equity Auction Notice Period.

5.2.1.3 At the Equity Auction, the successful purchaser will be required to execute the Equity Purchase Agreement, as modified by the results of the Equity Auction.

5.2.1.4 At the Equity Auction, the Debtor may establish additional procedures designed to maximize value from the sale of the New Interests or to ensure in the discretion of the Debtor the orderly conduct of the Equity Auction without further notice to Creditors, provided that the Equity Auction procedures are announced at the beginning of the Equity Auction.

5.2.1.5 Bid increments of $25,000 are approved and shall be initially utilized during the Equity Auction.

5.2.1.6 The Holders of Class III Interests shall be the stalking horse bidder and on or before the Confirmation Date, shall provide a cash deposit in actual funds of $25,000 (the "Deposit"), which shall not be refundable if Holders of Class III Interests are the successful purchasers and fail to close the transaction for a reason not attributable to the Debtor. The holder of Class III Interest is deemed a Qualified Bidder.

5.2.1.7 To qualify as a bidder (a "Qualified Bidder"), a Person must provide in writing to counsel for the Debtor no later than three (3) Business Days after the expiration of the Equity Auction Notice Period of each of the following: (A) a cash deposit in actual funds of $50,000, which is equal to the Deposit plus the next bid increment (the "Qualified Bidder Deposit"), which shall not be refundable in the event that such Person is the successful purchaser and fails to close the transaction for a reason not attributable to the Debtor; (B) financial and such other information that will reasonably allow the Debtor to make a determination as to the Qualifying Bidder's financial and other capabilities to consummate the transactions contemplated by the Plan, which information is satisfactory to the Debtor, in its sole discretion; (C) the identity of each Person seeking to be a Qualified Bidder and the identity of its ownership, if it is an Entity; (D) a representation and warranty from the Person seeking to be a Qualified Bidder that its ability to consummate the purchase under this Section 5.2 and ability to consummate the transactions under the Plan are not subject to any diligence or financing contingency; and (E) provide a fully completed copy of the Qualified Bidder Acknowledgement to Debtor's counsel.

5.2.1.8 If no Person becomes a Qualified Bidder other than the Holders of Class III Interests, then the Debtor shall not conduct the Equity Auction and may sell the New Interests to the Holders of Class III Interests.

5.2.1.9 The sale of the New Interests pursuant to the Equity Auction shall not become effective until the Effective Date of the Plan. If the Effective Date does not occur within 120 days after the Equity Auction, the sale of the New Interests shall be null and void.

5.2.1.10 Notwithstanding anything to the contrary contained herein, the successful bidder at the Equity Auction is

bound by all the terms and provision of this Plan, the Confirmation Order, and the Equity Purchase Agreement.

5.2.1.11 The Closing must take place no later than two (2) Business Days after the Equity Auction and all funds must be deposited in Cash in the client trust account of the Debtor's counsel prior to Closing.

5.2.1.12 If the successful purchaser does not close the transactions contemplated by this Section 5.2 of the Plan, then the successful purchaser shall forfeit the Deposit or Qualified Bidder Deposit and the Debtor shall sell the New Interests to the next highest bidder, who shall have two (2) Business Days to consummate the transaction.

5.2.1.13 Any unsuccessful bidder's Deposit or Qualified Bidder Deposit, if any, shall be returned to the Person that paid such Deposit or Qualified Bidder Deposit with seven (7) Business Days after Closing. The Equity Auction winner's Deposit or Qualified Bidder Deposit and the proceeds of the Equity Auction shall be retained and applied (i) first toward the full and indefeasible payment of Administrative Claims (ii) then to fund the Unsecured Distribution Pool, and (iii) then to Class III Interests.

5.3 **FUNDING OF THE PLAN.** Debtor reasonably believes that ongoing operations shall be sufficient to fund the Plan. Other sources of cash may be explored and utilized by the Debtor to the extent that cash infusions are necessary to meet the obligations of the Plan. If additional monies are needed, they may come from Debtor's principals as an interest-bearing loan, which shall be evidenced by a promissory note, and may be on a secured or unsecured basis.

5.4 **REFINANCING.** If necessary, the Reorganized Debtor may, in its sole discretion, seek to obtain refinancing from either a lending institution or from other sources in an effort to satisfy the necessary cash payments described in this Plan. If the Reorganized Debtor obtains such financing, it shall not obligate the Reorganized Debtor to accelerate any of the payments or obligations set forth in this Plan.

5.5 **AVOIDANCE ACTIONS**: Upon the Effective Date of the Plan and subject to any releases contained within this Plan, any Exhibit, or the Confirmation Order, the Reorganized Debtor shall have, and is hereby assigned, standing to pursue, settle, and resolve any and all Causes of Action, including those described in the Disclosure Statement, all of which have been adequately described and preserved.

5.6 **POST-EFFECTIVE DATE PROFESSIONAL FEES:** Any services performed or expenses incurred by any Professional on behalf of the Debtor, the Reorganized Debtor, or any Committee (if any) with respect to this Case after the Confirmation Date shall not be subject to the prior review and approval of the Bankruptcy Court. All fees and expenses of the Reorganized Debtor arising after the Confirmation Date shall be billed directly to the Reorganized Debtor. The entity responsible for such

fees and expenses shall pay the portion not objected to in accordance with the terms of the invoice.

5.7 **CONDITIONS PRECEDENT TO THE EFFECTIVE DATE**: Except as otherwise set forth in the Confirmation Order or as expressly waived by the Debtor in writing, the following conditions must be satisfied before the Effective Date (the "Conditions Precedent"):

5.7.1 The Bankruptcy Court shall have entered a Confirmation Order confirming the Plan in the Debtor's Case without any material modifications of or additions to the terms, conditions, and liabilities set forth in this Plan; and no request for revocation of the Confirmation Order under section 1144 of the Bankruptcy Code shall have been made, or, if made, shall remain pending.

5.7.2 The Confirmation Order shall not have been stayed pending any appeal of the Confirmation Order.

5.7.3 There shall be no pending motion to dismiss or convert the Debtor's Case or to appoint a Chapter 11 trustee or examiner.

5.7.4 The Debtor shall have sufficient Cash, in the Debtor's reasonable discretion, to pay all Allowed Administrative Claims and Allowed Priority Claims required to be paid under this Plan as of the Effective Date.

5.7.5 If necessary, the Closing of the transaction(s) contemplated by Section 5.2 of the Plan shall have occurred.

5.8 **<u>FAILURE OF A CONDITION PRECEDENT</u>:**

5.8.1 If Conditions Precedents are neither satisfied nor waived within ninety (90) days after entry of the Confirmation Order, the Confirmation Order and this Plan shall be null and void, unless the Debtor files a motion on or before such date requesting the Court extend the ninety (90) day period.

5.8.2 The Debtor may seek to withdraw this Plan at any time prior to the Effective Date by filing an appropriate motion with the Bankruptcy Court. If the Court allows the Debtor to withdraw the Plan, it shall be null and void for all purposes.

5.9 **<u>PRESERVATION OF CAUSES OF ACTION.</u>** In accordance with section 1123(b)(3) of the Bankruptcy Code, Debtor will retain and may (but is not required to) enforce all Retained Actions. After the Effective Date, Debtor, in its sole and absolute discretion, shall have the right to bring, settle, release, compromise, or enforce such Retained Actions (or decline to do any of the foregoing), without further approval of the Bankruptcy Court. Debtor (or any successors, in the exercise of their sole discretion), may pursue such Retained Actions so long as it is the best interests of Debtor (or any successors holding such rights of action). The

failure of Debtor to specifically list any claim, right of action, suit, proceeding or other Retained Action in this Plan or the Disclosure Statement does not, and will not be deemed to, constitute a waiver or release by Debtor of such claim, right of action, suit, proceeding or other Retained Action, and Debtor will retain the right to pursue such claims, rights of action, suits, proceedings and other Retained Actions in their sole discretion and, therefore, no preclusion doctrine, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches will apply to such claim, right of action, suit, proceeding or other Retained Actions upon or after the confirmation or consummation of this Plan. Debtor reserves all causes of actions for breach of any former or now existing agreement or otherwise. Neither the Disclosure Statement nor Plan shall be deemed a waiver of any right of Debtor to collect any receivable or right to payment under any applicable laws. Debtor expressly reserves the right to exercise any and all remedies available to Debtor regarding its accounts receivable or rights to payment at law or in equity, at such time or times as Debtor from time to time may elect. The Disclosure Statement and Plan are filed with a full reservation of rights. Any failure by Debtor to assert or set forth the occurrence of any other default or events of default which may have occurred shall not be deemed to be a waiver, release or estoppel of such other default or event of default. Debtor hereby

expressly reserve the right to declare any such other default or event of default and to take such other action as Debtor may be entitled to applicable law. No delay on the part of Debtor in exercising any right or remedy shall operate as a waiver in whole or in part of any right or remedy. The Disclosure Statement and Plan are filed with a full reservation of rights.

Without limiting the foregoing, Debtor specifically preserves any and all causes of action against Lender, including (i) wrongful acceleration of indebtedness, (ii) breaches of contract, (iii) negligence, and (iv) an accounting of all amounts received, their application and the calculation of all amounts claimed due as set forth in more detail in the Disclosure Statement.

5.10 **CORPORATE ACTION AND EFFECTUATING DOCUMENTS**: Each of the matters provided for in this Plan involving the Debtor or Reorganized Debtor, including corporate action to be taken or required of the Debtor or the Reorganized Debtor, shall, as of the Effective Date, be deemed to have occurred, approved, authorized, and shall be effective as provided under this Plan without the requirement of any further action of any kind by the member, manager, directors, officers, or board of the Debtor or Reorganized Debtor. Any officer of the Debtor shall be and hereby is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take

such actions as may be necessary or appropriate on behalf of the Debtor or Reorganized Debtor to effectuate and further evidence the terms and conditions of this Plan without further notice to, or order, action or approval of, the Debtor's managers, members, or the Bankruptcy Court.

5.11 **LIABILITIES OF THE DEBTOR.** Reorganized Debtor will not have any liabilities except those stated or assumed under this Plan. Reorganized Debtor will be responsible for all expenses incurred by Debtor in the ordinary course of business after the Petition Date, and those expenses will be paid in the ordinary course of business as they become due or as agreed by the Holders of the expense Claim.

5.12 **CORPORATE GOVERNANCE**. Consistent with section 1123(a)(6) and upon the Effective Date, the Debtor shall amend its articles of organization to include the following statement: "Until the date that is five (5) years after the Effective Date (defined in the Plan (defined herein)) of that certain *Plan of Reorganization* [ECF No.__] (the "Plan"), confirmed by the United States Bankruptcy Court for the Western District of Michigan, on [Date] in In re Sunset Properties, LLC, Case No. 26-03127, the Company shall not issue or authorize the issuance of any non-voting securities of the Company." A copy of the proposed amended articles of incorporation are attached as **Exhibit 5.12.** (the "Amended Articles of Organization").

# ARTICLE VI
## EFFECT OF CONFIRMATION

6.1 **DISCHARGE OF INDEBTEDNESS**: Except as otherwise provided in this Plan, the occurrence of the Effective Date of this Plan shall and does discharge and release the Claims of all Creditors in accordance with section 1141 of the Bankruptcy Code. Except as provided in this Plan, the occurrence of the Effective Date shall also act as a merger and relinquishment of any and all Claims that Creditors have, or may have, against either of the Debtor and the Reorganized Debtor except as provided in the treatment of the Creditors in Articles II and III. The forgoing notwithstanding, this paragraph shall not affect the rights of any taxing authority against any other entity or Person who may be liable or responsible for the taxes of the Debtor or Reorganized Debtor.

6.2 **WAIVER OF CLAIMS: EXCEPT AS TO ANY TAXING AUTHORITY OR AS OTHERWISE PROVIDED IN THE PLAN, CONFIRMATION SHALL ALSO CONSTITUTE A WAIVER BY CREDITORS OF ANY RIGHT THAT THEY MAY HAVE, UNLESS SUPPORTED BY A WRITTEN GUARANTEE (OR SIMILAR DOCUMENT), TO SEEK TO ENFORCE THEIR CLAIMS AGAINST THE INTEREST HOLDERS, WHETHER PURSUANT TO AN "ALTER EGO" CLAIM, A CLAIM FOR "PIERCING THE VEIL" OF THE DEBTOR OR THE**

**REORGANIZED DEBTOR'S CORPORATE EXISTENCE, OR OTHER SIMILAR CLAIM, AND WHETHER OR NOT SUCH CREDITOR IS THE HOLDER OF AN ALLOWED CLAIM AGAINST THE DEBTOR.**

6.3 **SUBORDINATED CLAIMS**. Pursuant to section 510 of the Bankruptcy Code, the Reorganized Debtor reserves the right to re-classify (or request that the Bankruptcy Court re-classify) any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

6.4 **DISCHARGE INJUNCTION**. **EXCEPT AS PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, AS OF THE EFFECTIVE DATE, ALL PERSONS AND ENTITIES THAT HAVE HELD, CURRENTLY HOLD, OR MAY HOLD CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILTIES THAT: (I) ARE SUBJECT TO COMPROMISE AND SETTLEMENT UNDER THE TERMS OF THIS PLAN; OR (II) ARE OTHERWISE STAYED, RELEASED, OR TERMINATED UNDER THE TERMS OF THE PLAN (OR WILL BE RELEASED OR TERMINATED UPON COMPLETION OF PAYMENTS UNDER THIS PLAN), ARE PERMANENTLY ENJOINED FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST ANY OF THE DEBTOR AND THE REORGANIZED DEBTOR OR ANY GUARANTOR (OR THEIR PROPERTY) ON ACCOUNT**

**OF ANY SUCH RELEASED OR TERMINATED CLAIMS, INTERESTS, CAUSES FO ACTION, OR LIABILITIES: (A) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION OR OTHER PROCEEDING; (B) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE, OR ORDER; (C) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE; (D) ASSERTING A SETOFF, RIGHT OF SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY DEBT, LIABILITY, OR OBLIGATION DUE TO THE DEBTOR; AND (E) COMMENCING OR CONTINUING ANY ACTION IN ANY MANNER, IN ANY PLACE THAT DOES NOT COMPLY, OR IS CONSISTENT, WITH THE PROVISIONS OF THIS PLAN.**

6.5 **PROTECTIONS AGAINST DISCRIMINATORY TREATMENT**. Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the United States Constitution, all Persons, including Governmental Units, shall not discriminate against the Reorganized Debtor or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtor or other Person with whom the Reorganized Debtor has been associated, solely because the

Debtor has been a debtor under Chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Case (or during the Chapter 11 Case but before the Debtor is granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Case.

6.6 **POST-EFFECTIVE DATE OPERATIONS**. On and after the Confirmation Date, the Reorganized Debtor shall operate its business in the ordinary course under the terms of this Plan and applicable non-bankruptcy law. The rules, restrictions, reports, and other requirements of the Bankruptcy Code, Bankruptcy Rules, and orders entered by the Bankruptcy Court shall continue to apply pending entry of a final decree only to the extent that such rules, restrictions, reports, and other requirements expressly apply, by their terms, after confirmation and the occurrence of the Effective Date.

6.7 **SETOFFS**. Except as otherwise expressly provided for in the Plan, the Reorganized Debtor pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed by the Holder of a Claim, may setoff against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account such Allowed Claim), any Claims, rights, and Causes of Action of any nature that the Debtor or the Reorganized Debtor, as applicable, may hold

against the Holder of such Allowed Claim (or against the predecessor-in-interest to Holder to the extent that the Holder takes such Allowed Claim subject to setoffs and defenses that may be asserted against the predecessor-in-interest), to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by the Reorganized Debtor of any Claims, rights, setoff rights and Causes of Action that the Reorganized Debtor may possess against such Holder. The Reorganized Debtor shall not be required to make any distributions to the Holder of any Allowed Claim to the extent that the Reorganized Debtor asserts setoff rights against such Holder until after entry of a Final Order resolving such setoff rights. In no event shall any Holder of Claims be entitled to setoff any Claim against any Claim, right, or Cause of Action of the Debtor or Reorganized Debtor unless such Holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

# ARTICLE VII
## MODIFICATION OF THE PLAN

7.1 **AMENDMENTS TO PLAN:** The Debtor may, from time to time, propose amendments or modifications of this Plan prior to its confirmation, without leave of the Court. After confirmation, the Debtor may, with leave of the Bankruptcy Court, and upon notice and opportunity for hearing to the affected Creditor(s) only, remedy any defect or omission, reconcile any inconsistencies in the Plan, or in the Confirmation Order or otherwise modify the Plan.

7.2 **REVOCATION OR WITHDRAWAL OF THE PLAN**: The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to file subsequent Chapter 11 plan(s). If the Plan is withdrawn or revoked, or if confirmation or consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption, assignment, or rejection of executory contracts or unexpired leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (i) constitute a waiver or release of any Claims, Interests, or Causes of Action; (ii) prejudice in any manner the right of the Debtor

or any other Person; or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other Person.

## ARTICLE VIII
## JURISDICTION OF THE COURT

8.1 Following the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising from or relating to the Chapter 11 Case to the fullest extent of applicable law, including, without limitation, all of the following:

A. To hear and determine any timely objections to Claims, including Proofs of Claim, or to Administrative Claims, both before and after the Effective Date, including any objections to the classification of any Claim, and to Allow, Disallow, determine, liquidate, classify, estimate, or establish the amount, priority, secured or unsecured status of any Claim in whole or part.

B. The classification of the Claim of any Creditor and the re-examination of Claims which have been Allowed for purposes of voting, and the determination of such objections as may be filed to Claims of Creditors. The failure by the Debtor or the Reorganized Debtor to object to, or to examine any Claim for the purposes of voting, shall not be deemed to be a waiver of any right to object to, or reexamine the Claim in whole or in part. Furthermore, the fact that this Plan has provided a treatment for the benefit of a particular Creditor shall not in any way be deemed to be

a waiver of any right to object to or re-examine the Claim or any secured interest whether by mortgage or otherwise which secures such Claim, in whole or in part.

C. The resolution of any Disputed Claims or Disputed Interests.

D. To hear and determine any and all motions, adversary proceedings, applications and contested or litigated matters that may be pending on the Effective Date or that, pursuant to this Plan, may be instituted by the Reorganized Debtor after the Effective Date including any claims to recover assets for the benefit of the Estate, except for matters waived or released under this Plan.

E. The determination of all questions and disputes regarding title to the assets of the Estate, and all Causes of Action, controversies, disputes, or conflicts, whether or not subject to action pending as of the Confirmation Date, between the Debtor or the Reorganized Debtor or any other party.

F. The correction of any defect, the curing of any omission or the reconciliation of any inconsistency in this Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of this Plan.

G. The modification of this Plan after confirmation pursuant to the Bankruptcy Rules and the Bankruptcy Code and as provided as in Article VII of the Plan.

H. The enforcement and interpretation of the terms and conditions of this Plan and the entry of orders in aid of confirmation of this Plan.

I. The entry of any order, including injunctions, necessary to enforce the title, rights, and powers of the Debtor, the Reorganized Debtor, or any party-in-interest, and to impose such limitations, restrictions, terms and conditions of such title, rights, and powers as this Court may deem necessary, to accomplish its obligations under the Plan.

J. To hear and determine applications for allowance of compensation and reimbursement of expenses of Professionals under sections 330, 331 and/or 503(b) of the Bankruptcy Code and any other fees and expenses authorized to paid or reimbursed under this Plan.

K. To determine matters concerning local, state, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code and to determine any tax Claims that may arises as a result of the transactions contemplated by this Plan.

L. The assumption or rejection of executory contracts and/or unexpired leases, including issues related to cure rights, under Article XI of this Plan.

M. The right to pursue any Avoidance Actions or Causes of Action.

N. The entry of an order determining the validity of any Lien.

O. The entry of an order concluding and terminating this Case.

P. To hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE IX
## TITLE TO PROPERTY

9.1 **VESTING OF PROPERTY.** Title to the property of the Debtor shall vest in the Reorganized Debtor upon the Effective Date of the Plan. The Debtor shall be discharged from its status as a Debtor-in-Possession and the affairs and business of the Reorganized Debtor shall thereafter be conducted without Court involvement except as may be governed by Articles V and VIII of the Plan. As of and following the Effective Date, the Reorganized Debtor may operate its business and use, acquire, and dispose of property and settle and compromise Claims, Causes of Action, or Interests without the supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code, Bankruptcy Rules, or Bankruptcy Court Order, other than those restrictions expressly imposed by this Plan and the Confirmation Order.

## ARTICLE X
## UNITED STATES TRUSTEE FEES

10.1 **U.S. TRUSTEE FEES AND REPORTS.** The Reorganized Debtor shall continue to remit to the office of the United States Trustee all appropriate post-confirmation monthly reports/affidavits for all relevant time periods until the Case

is closed by order of the Bankruptcy Court or converted to a case under Chapter 7 of the Bankruptcy Code. The Reorganized Debtor shall pay to the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) for all quarters and shall continue to remit quarterly fee payments based on all disbursements, until the Case is closed by order of the Bankruptcy Court, or converted to a case under Chapter 7 of the Bankruptcy Code. Notwithstanding the foregoing, if any Creditor or other party-in-interest reopens this Case after it has been first closed, then such party-in-interest shall (i) be solely responsible for all sums required pursuant to 28 U.S.C. §1930(a)(6), (ii) timely pay all such required pursuant to 28 U.S.C. §1930(a)(6), and (iii) indemnify and hold harmless the Reorganized Debtor against any and all expenses, including, without limitation, reasonable attorneys' fees, incurred as a result of reopening of this Case.

## ARTICLE XI
## EXECUTORY CONTRACTS

11.1 **ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES.** Unless addressed in Article III or XI of this Plan or otherwise assumed or rejected by Final Order of the Bankruptcy Court, all executory contracts and unexpired leases of the Debtor which are either: (i) not expressly assumed or (ii) not the subject of a pending application to assume as of sixty (60) days after the Effective Date, shall be

deemed rejected. The executory contract(s) and/or unexpired lease(s) which are the subject thereof shall be assumed (and, if appropriate, assigned) upon the Effective Date subject to the provisions of this Article XI.

If the Debtor has not listed an executory contract or unexpired lease in the Schedules and, at any time within sixty (60) days after the Effective Date (but before administrative closing of this Chapter 11 Case) the Reorganized Debtor determines that it would be beneficial to assume such executory contract or unexpired lease, the Reorganized Debtor may file a motion to assume the executory contract or unexpired lease along with a proposed cure amount, and shall be entitled to assume the executory contract or unexpired lease on the terms set forth in the motion if no objection is filed within fourteen (14) days after service. If an objection is timely filed, the cure amount dispute provisions of Article XI shall apply.

11.2 **REJECTION CLAIMS.** Any Creditor who has a Claim as a result of such rejection shall have sixty (60) days after the later of (i) the Effective Date or (ii) the date that the such executory contract is rejected to file a Proof of Claim, failing which such Claim shall be Disallowed in its entirety. The solicitation of this Plan shall be sufficient notice informing any potential Creditor of this requirement.

11.3 **OBJECTIONS TO REJECTION CLAIMS.** The Reorganized Debtor may file an objection to any Proof of Claim filed in accordance with Section 11.2 of the

Plan on or before the later of (i) sixty (60) days after the filing of the Proof of Claim or (ii) the time set for the filing of objections in Section 12.1 of the Plan (including any extensions). The objection will be resolved in accordance with Article XII.

11.4 **ASSUMPTION AND CURE PAYMENTS**. All assumed executory contracts and unexpired leases shall be Cured by the Reorganized Debtor pursuant to Section 11.5 of the Plan, unless other provisions have been agreed to by the counter-party or provided under this Plan. As long as the Reorganized Debtor complies with Section 11.5 of the Plan, all executory contract and unexpired lease counterparties must fulfill all contract and lease obligations and are enjoined from declaring a default for non-performance due to the bankruptcy or pre-assumption default.

11.5 **RESOLUTION OF CURE CLAIM DISPUTES.** For each executory contract or unexpired lease to be assumed under this Article XI, the Debtor or the Reorganized Debtor shall deliver a written proposal to the contract counter-party not later than thirty (30) days after the Effective Date describing the method, timing and amount of any proposed Cure (each a "Cure Notice"). The Debtor's or Reorganized Debtor's proposal, as applicable, in the Cure Notice shall be binding upon, and deemed accepted and agreed by, the contract counter-party unless the contract counter-party delivers to the Debtor's or the Reorganized Debtor's counsel, within fourteen (14) days after receipt of the proposal, a written objection detailing all

reasons for the counter-party's objection and setting forth a counter-proposal. Acceptance of the cure proposed in any Cure Notice by a contract counter-party replaces and supersedes any Proof of Claim filed by or on behalf of such contract counter-party involving or related to the applicable assumed contract or lease. In the event that the dispute cannot be resolved, either party may petition the Bankruptcy Court to resolve the dispute through filing of a properly noticed motion. In the event that the Bankruptcy Court sets a Cure amount greater than the Cure amount proposed by the Debtor, the Debtor or the Reorganized Debtor shall have fourteen (14) days to Cure or reject the contract or lease by filing a notice of rejection on the docket in this Case and giving notice thereof to the affected Creditor (which may be through the Court's electronic case filing system).

11.6 **PRELIMINARY ASSUMPTION PENDING CHALLENGES:** The assumption of a contract or lease under this Article does not prejudice the Debtor's or Reorganized Debtor's right to challenge whether any contract or lease is an executory contract or unexpired lease, as opposed to a disguised security agreement. If the Debtor or Reorganized Debtor challenges an assumed executory contract or unexpired lease, the Reorganized Debtor shall not be required to comply with the disputed portions of the executory contract or unexpired lease until a Final Order is entered resolving the dispute. If the dispute is not resolved in

the Reorganized Debtor's favor, the Reorganized Debtor has the right to reject the executory contract or unexpired lease for a period of twenty-one (21) days after entry of a Final Order by filing a notice of rejection on the docket in this Case and sending notice thereof to the affected Creditor.

## ARTICLE XII
## OBJECTIONS TO CLAIMS

12.1. **TIMING OF OBJECTIONS:** The Debtor or the Reorganized Debtor may object to the allowance of any Claim, or the extent, validity, and enforcement of any security interest, whether listed on the Schedules filed by the Debtor or filed by any Creditor, on or before the later of (a) sixty (60) days from the date of filing of any Proof of Claim or (b) eight (8) months after the Effective Date.

12.2 **EXTENT OF OBJECTIONS:** As part of the objection process set forth in Section 12.1 of the Plan, and without limiting same, the Debtor and/or the Reorganized Debtor shall have the right to object to any Lien.

12.3 **CLAIM DISPUTE RESOLUTION PROCEDURES**: The Reorganized Debtor shall be authorized to resolve all Disputed Claims by withdrawing or settling objections thereto, or by litigating to judgment in the Bankruptcy Court the validity, nature, and/or amount thereof. If the Reorganized Debtor agrees with the Holder of a Disputed Claim to compromise, settle, and/or resolve a Disputed Claim by granting such Holder an Allowed Claim, then the Reorganized Debtor may

compromise, settle, and/or resolve such Disputed Claim without Bankruptcy Court approval.

12.4 **CLAIMS BAR DATE**: Except as provided herein or otherwise agreed and provided that the late-filing Creditor has submitted a ballot with respect to this Plan, then any and all Proofs of Claim filed after the applicable Bar Date by such late-filing Creditor shall be deemed Disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Date such late Claim has been deemed timely filed by a Final Order. If a Creditor has filed a Proof of Claim after the applicable Bar Date and did not submit a ballot with respect to this Plan, then the Debtor or Reorganized Debtor must seek to Disallow such Claim consistent with the procedures contained in this Article XII.

## ARTICLE XIII
## PROVISIONS REGARDING DISTRIBUTIONS

13.1 **DISPUTED PAYMENTS**: Notwithstanding anything in this Plan to the contrary, the Debtor or Reorganized Debtor shall not be obligated to make any payments towards the Disputed portion of any Disputed Claim. Except as provided in Articles II and III, the Reorganized Debtor shall withhold any such payments, and, if the dispute is resolved in favor of the Claim Holder, the Reorganized Debtor shall

make any missed distributions within fourteen (14) days after entry of a Final Order determining the Claim. Except as provided in Articles II and III, if a Secured Claim is Disputed then upon escrowing the Disputed amount any Lien shall be transformed to the escrowed proceeds and the affected Creditor shall be and is hereby required to discharge its Lien.

13.2 **DELIVERY OF DISTRIBUTIONS IN GENERAL**: Except as otherwise provided in the Plan, and notwithstanding any authority to the contrary, distributions to Holders of Allowed Claims and Allowed Interests shall be made by the Reorganized Debtor, in order of preference, (a) at the addresses set forth in any written notices of address changes delivered to the Reorganized Debtor after the date of any related Proof of Claim, (b) at the addresses set forth on the Proofs of Claim filed by such Holders of Claims, or (c) at the addresses reflected in the Schedules if no Proof of Claim has been filed and the Reorganized Debtor has not received a written notice of a change of address. Except as set forth herein, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or similar legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan. The Reorganized Debtor shall not incur any liability

whatsoever on account of any distributions under the Plan except for gross negligence or willful misconduct.

13.3 **<u>ALLOCATION OF PAYMENTS</u>**: All distributions shall be allocated first to principal until the principal amount of the Claim is paid in full, next to interest if interest is Allowed in relation to the Claim, and, finally, to fees, costs, and expenses if such are Allowed.

13.4 **<u>COMPLIANCE WITH TAX REQUIREMENTS AND ALLOCATIONS</u>**: In connection with the Plan, to the extent applicable, the Reorganized Debtor shall be authorized to take all actions necessary or appropriate to comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms it believes are reasonable and appropriate. The Reorganized Debtor reserves the right, in its sole discretion, to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, other spousal awards, Liens, and encumbrances. Each Holder of an Allowed Claim must provide a completed IRS form W-9 to the Reorganized Debtor within thirty (30) days after the Effective

Date in order to be eligible to receive a distribution under this Plan. Receipt of this Plan by Holders of Claims is sufficient notice of the obligation to provide the Reorganized Debtor with an IRS from W-9.

13.5 **UNDELIVERABLE DISTRIBUTIONS AND NON-NEGOTIATED CHECKS**: If any distribution to a Holder of a Claim is returned as undeliverable, no further distributions to such Holder of such Claim shall be made unless and until the Reorganized Debtor is notified of the then-current address of such Holder of the Claim, after which time future distributions shall be made to such Holder of the Claim without interest at such address. If checks issued by the Reorganized Debtor on account of Claims are not negotiated within one hundred and twenty (120) days after the issuance of such check, the check shall be null and void. Amounts in respect to undeliverable distributions and non-negotiated checks shall be held by the Reorganized Debtor until (i) such distributions are claimed or (ii) ninety (90) days after the check is returned or voided due to non-negotiation, after which date all such undistributed and non-negotiated amounts shall revert to the Reorganized Debtor free of any restrictions thereon and the Claim of any Holder or successor to such Holder with respect to such distribution shall be discharged and forever barred, notwithstanding federal or state escheat laws to the contrary.

Nothing contained herein shall require the Reorganized Debtor to attempt to locate any Holder of an Allowed Claim.

13.6 **<u>FRACTIONAL PAYMENTS AND MINIMUM DISTRIBUTIONS</u>**: Notwithstanding any other provision of the Plan to the contrary, distributions of less than fifteen dollars ($15.00) to any Creditor shall not be required nor shall payments of fractions of dollars. Payment of fractions of dollars that would otherwise be distributed under the Plan shall be rounded to the lower whole number of dollars.

13.7 **<u>INTEREST AND PENALTIES ON CLAIMS</u>:** Unless otherwise specifically provide for in the Plan, the Confirmation Order, or required by applicable bankruptcy law, post-petition interest and penalties shall not accrue or be paid on any Claims; and no Holder of a Claim shall be entitled to interest and penalties accruing on or after the Petition Date through the date that such Claim is satisfied in accordance with the terms of this Plan. To the extent that any Allowed Claim is composed of indebtedness and accrued but unpaid interest thereon, such distribution shall, to the extent permitted by applicable law, be allocated for United States federal income tax purposes to the principal amount of the Allowed Claim first and then, to the extent the consideration exceeds the principal amount of the Allowed Claim, to the portion of the Claim representing accrued but unpaid interest.

13.8 **PREPAYMENT.** The Reorganized Debtor may, but shall not be obligated to, pre-pay any of the claims at any time in its sole, absolute, and unfettered discretion. If the Reorganized Debtor elects to pre-pay any obligation, it shall not incur any pre-payment obligation, and any such pre-payment obligation contained in any pre-petition contract, agreement or document shall not apply.

## ARTICLE XIV
## MISCELLANEOUS PROVISIONS

14.1 **RELEASE OF LIENS:** The Debtor, the Reorganized Debtor, and all parties-in-interest, including without limitation any Creditor, shall be required to execute any document reasonably requested by the other to memorialize and effectuate the terms and conditions of this Plan. This shall include without limitation any execution by the Debtor or the Reorganized Debtor of uniform commercial code ("UCC") financing statements and the execution by Creditors of any UCC or mortgage discharges, releases, or terminations.

14.2 **RECOUPMENT**. In no event shall any Holder of a Claim or Interest be entitled to recoup any Claim or Interest against any Claim, right, or Cause of Action of the Debtor or the Reorganized Debtor, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtor on or before the Confirmation Date, notwithstanding any indication in any Proof of

Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

14.3 **<u>COMPROMISE OF LITIGATION:</u>** The Reorganized Debtor shall have the right to commence, continue, amend or compromise all Causes of Action (including without limitation any Avoidance Action and any action described in the Debtor's Disclosure Statement) available to the Debtor, the Estate, or the Reorganized Debtor, whether or not those Causes of Action were the subject of a suit as of the Confirmation Date.

14.4 **<u>BINDING EFFECT/SUCCESSORS AND ASSIGNS:</u>** Except as otherwise provided in this Plan or the Confirmation Order, entry of the Confirmation Order makes this Plan binding on the Debtor, the Creditors, Interest Holders, and all parties-in-interest, regardless of whether a ballot was cast to accept or reject this Plan and notwithstanding any post-confirmation conversion or dismissal of this Case under section 1112 of the Bankruptcy Code. This Plan and the Confirmation Order shall inure to the benefit of, and be binding upon, all parties-in-interest and their respective successors and assigns.

[Signature Page Follows]

[Signature Page to Plan of Reorganization]

Respectfully submitted,

SUNSET PROPERTIES, LLC

By: _/s/ Matthew Schmidt ___
Matthew Schmidt
Its: Authorized Representative

SCHAFER AND WEINER, PLLC

By:_/s/ Daniel J. Weiner_____
DANIEL J. WEINER (P32010)
HOWARD M. BAUM (P51959)
JOHN J. STOCKDALE, JR. (P71561)
Proposed counsel for Debtor
40950 Woodward Ave., Ste. 100
Bloomfield Hills, MI 48304
248-540-3340
dweiner@schaferandweiner.com

Dated: October 2, 2026